

August 7, 2019

*VIA EMAIL AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED*

David Bernhardt
Secretary of the Interior
U.S. Department of the Interior
1849 C Street N.W.
Washington, D.C. 20240

> **RE: Notice of Violation of the Endangered Species Act Section 7 for Failing to Consult Regarding the Izembek Land Exchange**

Dear Mr. Bernhardt:

On behalf of Friends of Alaska National Wildlife Refuges, The Wilderness Society, National Audubon Society, Wilderness Watch, Center for Biological Diversity, Defenders of Wildlife, National Wildlife Refuge Association, Alaska Wilderness League, and Sierra Club (collectively "Petitioners"), and pursuant to 16 U.S.C. § 1540(g)(2)(a)(1), Trustees for Alaska submits the following 60-day notice letter to inform you that Petitioners intend to sue the U.S. Department of the Interior ("Interior") for violating the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544. Interior violated ESA Section 7 consultation requirements by failing to consult on impacts to threatened and endangered species that may be adversely affected by the Land Exchange Agreement signed by Secretary Bernhardt on July 3, 2019.[1] The Exchange Agreement commits Interior to exchanging lands within designated Wilderness of the Izembek National Wildlife Refuge ("Izembek Refuge") to the King Cove Corporation for the purpose of constructing and operating a road between the communities of King Cove and Cold Bay, Alaska.

The Izembek Refuge, established in 1960, includes internationally significant eelgrass beds in Izembek and Kinzarof lagoons, as well as adjacent wetlands and uplands of the narrow isthmus. Many species depend upon these wetlands and lagoons, including several federally-protected species. In December 2013, Secretary of the Interior Sally Jewell issued a decision rejecting a proposed land exchange with the State of Alaska and Alaska Native corporations. The land exchange would have allowed for construction of a road through the Izembek Refuge, similar to that authorized by the Exchange Agreement signed by Secretary Bernhardt. Secretary Jewell's decision was informed by a nearly four-year process that produced an Environmental

---

[1] U.S. Department of Interior, Agreement for the Exchange of Lands (July 12, 2019) ("Exchange Agreement").

Ex. A

Impact Statement ("Land Exchange EIS") on the effects of the proposed land exchange.² The Land Exchange EIS analyzed the impact a road would have on Izembek's important ecology and congressionally-designated Wilderness, including a route through the southern portion of Izembek's isthmus. The proposed road would have bisected an expanse of tundra, lagoons, and other waterways that provide a vital feeding ground for migrating birds as well as bears, caribou, and other species.

In January 2018, former Interior Secretary Ryan Zinke signed an agreement with King Cove Corporation seeking to trade away lands in Izembek Refuge. This 2018 agreement led Petitioners to file a lawsuit in the U.S. District Court for the District of Alaska.³ This litigation included a claim for violation of the ESA for failure to consult on the 2018 exchange agreement.⁴

In July 2018, while that lawsuit was pending before the District Court, Interior authorized the Bureau of Land Management (BLM) to survey the proposed road corridor. BLM conducted approximately 86 helicopter landings over two days within Izembek's congressionally designated Wilderness.⁵ BLM used these helicopters to land on the narrow isthmus where animals nest, feed, and migrate in order to install monuments.⁶ These surveys were conducted without public notice, and no Section 7 ESA consultation was conducted prior to these surveys moving forward. Petitioners protested this survey on November 9, 2018. BLM denied the protest on March 11, 2019.

The District Court vacated the 2018 exchange agreement on March 29, 2019, finding that it violated the Administrative Procedure Act because Interior had failed to justify the change in policy from the prior administration, which found the road would be too destructive.⁷ In light of this ruling, the Court did not reach the merits of Petitioner's ESA claim.⁸ Interior timely appealed the Court's decision to the Ninth Circuit Court of Appeals, and moved to dismiss its appeal on July 16, 2019.

On July 3, 2019, without any notice to the public and nearly two weeks before the Interior Department moved to dismiss its Ninth Circuit appeal, Secretary Bernhardt signed a new exchange agreement. On July 12, 2019, King Cove Corporation executed the agreement, which is the subject of this notice letter. This Exchange Agreement is a final agency action that binds Interior to exchange lands with King Cove Corporation. The Exchange Agreement seeks to transfer the surface and subsurface estate of the lands within the corridor of Izembek Refuge delineated by Interior's previous survey — which was completed under the illegal and now

---

² U.S. Fish & Wildlife Service, Izembek National Wildlife Refuge Land Exchange/Road Corridor EIS (Feb. 2013).
³ *See Friends of Alaska Nat'l Wildlife Refuges v. Bernhardt*, 381 F. Supp. 3d 1127 (D. Alaska 2019).
⁴ Amended Complaint, Case No. 3:18-cv-00029, at 25 (Apr. 19, 2018); *Friends of Alaska Nat'l Wildlife Refuges*, 381 F. Supp. 3d at 1133.
⁵ Letter from Alaska Wilderness League, et al., to Ted Murphy, BLM Alaska Acting State Director, Re: Statement of Reasons for Protest of Filing of Plats of Survey: Alaska, Federal Register vol. 83, No. 196 (Oct. 10, 2018) related to the Izembek National Wildlife Refuge, at 1–2 (Dec. 10, 2018).
⁶ *Id*.
⁷ *Friends of Alaska Nat'l Wildlife Refuges*, 381 F. Supp. 3d at 1143.
⁸ *Id*. at n.124.

invalided 2018 exchange agreement — of the proposed road route. King Cove Corporation describes this route as "nearly identical" to the southern road alignment considered in the Land Exchange EIS.[9]

Species listed as threatened or endangered pursuant to the ESA that occur in the Izembek Refuge and area subject to the Exchange Agreement include the Alaska breeding population of Steller's eider (*Polysticta stelleri*), the southwest Alaska distinct population segment of northern sea otter (*Enhydra lutris kenyoni*), and the western distinct population segment of Steller sea lion (*Eumetopias jubatus*). U.S. Fish and Wildlife Service ("FWS") listed the Alaska breeding population of Steller's eider as threatened in 1997, and its designated critical habitat includes areas within the Izembek Refuge. FWS determined that "[t]ens of thousands of Steller's eiders use Izembek Lagoon for molting in the fall and staging for migration in the spring."[10] Northern sea otters, which FWS listed as threatened in 2005, appear year-round in marine waters adjacent to the Izembek Refuge and the Izembek Lagoon was designated as part of its designated critical habitat in 2009. Northern sea otters do not use the terrestrial habitats included in the proposed land exchange but may occur in adjacent nearshore and estuarine environments in high densities. The National Marine Fisheries Service (NMFS) classified the western distinct population segment of Steller sea lion as endangered in 1997, and its 20-nautical mile critical habitat buffer extends into the Izembek Lagoon.

Congress enacted the ESA to ensure the protection and conservation of threatened and endangered species.[11] The fundamental, express purpose of this federal statute is to conserve endangered and threatened species and the ecosystems upon which they depend.[12] The obligations imposed by the ESA on federal agencies are clear: "Each Federal agency, shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat . . . ."[13]

An agency's duty to consult is triggered when it has determined that its actions "may affect" a threatened or endangered species.[14] The ESA regulations require that the consultation process consider "the direct and indirect effects of an action on the species or critical habitat, together with the effects of other activities that are interrelated or interdependent with that action . . . ." that are to be added to the environmental baseline, as well as the action's "cumulative

---

[9] Letter from Dean Gould, President, King Cove Corporation to David Bernhardt, Secretary of Interior, at 4 (May 21, 2019).
[10] Land Exchange EIS 4-313.
[11] 16 U.S.C. § 1531(b).
[12] *Id.*
[13] *Id.* § 1536(a)(2).
[14] *Id.* § 1536(a)(3); 50 C.F.R. § 402.14(a).

Page 3

effects."[15] Cumulative effects "are those effects of future State or private activities . . . that are reasonably certain to occur within the action area of the Federal action subject to consultation."[16]

When entering into the Exchange Agreement, Interior failed to satisfy its duties under the ESA because it failed to initiate and complete consultation regarding the effects of the action on the Steller's eider, the northern sea otter, the Steller sea lion, and their designated critical habitats, as mandated by section 7 of the ESA (*see* 16 U.S.C. § 1536). In its earlier Land Exchange EIS, FWS concluded that road construction, operation, and maintenance resulting from the land exchange "may affect" federally listed species.[17] As part of this process, FWS consulted internally and with NFMS solely on FWS's preferred alternative — the No Action Alternative — under which the land exchange would not occur and no road would be built.[18] FWS did not consult on any of the Land Exchange EIS's action alternatives.

Secretary Bernhardt's latest attempt to trade away Izembek Refuge lands to allow the construction of a road along the southern route requires Interior to initiate and complete consultation. The previous consultation's "no effect" finding was based on the selection of the no-action alternative and does not satisfy Interior's ESA obligations for the Exchange Agreement. Additionally, the FWS found during the Land Exchange EIS process that road construction resulting from this land exchange "may affect" listed species.

Secretary Bernhardt's assertion that the Service properly reviewed and relied on its earlier findings that an exchange will not adversely affect listed species does not satisfy Interior's obligation to consult on the agency action in the present case — to exchange lands for purposes of road construction, operation, and maintenance.[19] As evidenced by Interior's earlier attempt to exchange lands, the exchange itself may result in disturbance within Izembek from helicopter traffic and other activities associated with surveys and appraisals required by this Exchange Agreement. These activities are subject to consultation.

Additionally, Section 7 plainly requires the action agency to consider the direct, indirect, and cumulative effects of the agency's action, which includes road construction. The Secretary is also incorrect that the land exchange is a "purely legal transaction" that does not require FWS to

---

[15] 50 C.F.R. § 402.02.
[16] *Id*.
[17] For instance, the Land Exchange EIS specifically found that the potential southern corridor may lead to "noise disturbance effects from road construction activities occurring during the fall construction period (August to November)." Land Exchange EIS at 4-185. "Year-round operation and maintenance of the road would coincide with Steller's eiders presence . . . in the area and could result in effects that are . . . observable[], long-term duration . . . , and localized (within the area of the Izembek isthmus)." *Id*. at 4-188.
[18] *See* U.S. Fish & Wildlife Service, Biological Assessment and Intra-Section 7 – Izembek National Wildlife Refuge, Memorandum (Feb. 12, 2013); Letter from Jeffrey Brooks, Acting Chief, Division of Conservation Planning and Policy, FWS to James Balsinger, Regional Administrator, NMFS (Feb. 13, 2013).
[19] U.S. Department of Interior, Agreement for the Exchange of Lands, Findings and Conclusions Concerning a Proposed Land Exchange Between the Secretary of the Interior and King Cove Corporation for Lands Within Izembek National Wildlife Refuge, Alaska, at 15–16.

Page 4

consult on impacts from the road that is enabled by this exchange.[20] The fact that subsequent funding, planning, and permitting will occur prior to road construction does not mean that the road is not an effect of the action that had to be considered under the ESA prior to Interior entering into the Exchange Agreement. Moreover, once the land is transferred, Interior will be relieved of its duty to consult as it will no longer have federal ownership and therefore discretionary control over the action. Thus, this the sole opportunity for Interior to consult on the potential effects of this land exchange on listed species. To comply with its Section 7 consultation requirements, Interior is required to complete consultation not only on the land exchange itself, but on the impacts to listed species of the road construction, operation, and maintenance that the land exchange is expressly designed to facilitate prior to entering the Exchange Agreement.

FWS has acknowledged that a decision to approve a land exchange for the purpose of constructing a road across the Izembek isthmus "may affect" listed species. Interior, however, has failed in its clear duties to complete consultation for Steller's eiders, northern sea otters, Steller sea lions, and their respective critical habitats under the Exchange Agreement signed by Secretary Bernhardt. Unless Interior takes immediate steps to initiate and complete the required consultations, we will be forced to file suit 60 days from the date of this letter. Please do not hesitate to contact me at (907) 433-2011 or bpsarianos@trustees.org with any questions or to notify the Petitioners of the agency's intent to comply with the ESA by completing consultation.

Thank you for your prompt attention to our concerns.

Sincerely,

Bridget Psarianos
Staff Attorney
Trustees for Alaska

CC:
Margaret Everson, Principal Deputy Director, U.S. Fish and Wildlife Service
Roslyn Sellars, Executive Assistant, Office of the Director, U.S. Fish and Wildlife Service
Greg Siekaniec, U.S. Fish and Wildlife Service, Regional Director, Alaska Region
Jim Balsiger, U.S. National Oceanic and Atmospheric Administration, Regional Administrator, Alaska Region

---

[20] *Id*. at 16.

Page 5

Ex. A
Case 3:19-cv-00216-JWS   Document 17-1   Filed 10/07/19   Page 5 of 5