Bridget Psarianos (AK Bar No. 1705025)
Brook Brisson (AK Bar No. 0905013)
Valerie Brown (AK Bar No. 9712099)
TRUSTEES FOR ALASKA
1026 W. Fourth Avenue, Suite 201
Anchorage, AK 99501
Phone: (907) 276-4244
Fax: (907) 276-7110
bpsarianos@trustees.org
bbrisson@trustees.org
vbrown@trustees.org

*Attorneys for Plaintiffs*

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FRIENDS OF ALASKA NATIONAL WILDLIFE REFUGES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID BERNHARDT, *et al.*, <br><br> Defendants, <br><br> and <br><br> KING COVE CORPORATION, *et al.*, <br><br> Intervenor-Defendants. | Case No. 3:19-cv-00216-JWS |

DECLARATION OF KARLIN JOSEPH ITCHOAK IN SUPPORT OF PLAINTIFFS'
OPENING BRIEF FOR SUMMARY JUDGMENT

I, Karlin Joseph Itchoak, hereby declare as follows:

1. I am making this declaration in support of Plaintiffs' Opening Brief for

Summary Judgment in the above-captioned litigation. I know these facts of my own

*Friends of Alaska National Wildlife Refuges, et al., v. Bernhardt, et al.*    Ex. 8
Case No. 3:19-cv-00216-JWS    Page 1 of 12
Case 3:19-cv-00216-JWS   Document 32-9   Filed 01/23/20   Page 1 of 12

personal knowledge and would competently testify to them if called as a witness in these proceedings.

2. I am the Alaska State Director for The Wilderness Society (TWS), a nonprofit organization headquartered in Washington, DC, with offices throughout the country, including Alaska. I am also a member of TWS.

3. TWS's overall mission is to protect wilderness and inspire Americans to care for our wild places. The goal of our Alaska program is to permanently protect special places in America's arctic and sub-arctic, including Alaska's national wildlife refuges and designated Wilderness areas within Alaska. This includes Izembek National Wildlife Refuge (Izembek) and the designated Wilderness lands there.

4. TWS has close to one million members and supporters, many of whom are in Alaska.

5. TWS's members and staff, including myself, rely on TWS to represent our interests in the preservation of Wilderness and wild places such as those in Izembek.

6. I joined TWS in June of 2019 as the Alaska State Director. I previously worked for the Ukpeagvik Inupiat Corporation (UIC) as Chief Administrative and Legal Officer. Before joining UIC, I was the Director of the Alaska Rural and Indigenous program at the Institute of the North. I have a B.A. in Alaska Native Studies and a B.A. in Political Science from the University of Alaska Fairbanks and a J.D. from Gonzaga University School of Law.

7. My responsibilities at TWS include working as the organizational lead for the Alaska program, and managing staff and overseeing our Alaska program and

*Friends of Alaska National Wildlife Refuges, et al., v. Bernhardt, et al.*     Ex. 8
Case No. 3:19-cv-00216-JWS     Page 2 of 12
Case 3:19-cv-00216-JWS    Document 32-9    Filed 01/23/20    Page 2 of 12

outcomes, which involve a team of six individuals focused on policy, science, communications, and strategy development.

8. I am familiar with the history of TWS and our work to protect Izembek.

9. The founders of TWS created the organization to ensure that certain special and wild areas were set aside forever, to protect them from the impacts of roads and cars, and other industrial-scale intrusions. Izembek is important to TWS because it has globally significant wildlife and wilderness values. It is unique among refuges and wetlands complexes throughout the world. Izembek has been repeatedly recognized internationally for its global significance, primarily due to the high habitat values of the lagoons complex. Specifically, Izembek is:

- Identified under the Ramsar Convention on Wetlands (since 1986) as the first wetlands area in North America to be placed on the *List of Wetlands of International Importance*;
- Designated as a Marine Protected Area to provide lasting protection for the lagoons complex;
- Recognized as an Important Bird Area of global significance (since 2001) by BirdLife International in partnership with National Audubon Society;
- Listed as a Sister Refuge with Russia's Kronotskiy State Biosphere Reserve (since 1991) through a U.S. – Russian Governmental Agreement on Cooperation in Environmental Protection;
- Identified as globally significant for its habitat value and role in biodiversity protection by World Wildlife Fund and The Nature Conservancy; and
- Qualified to be a Western Hemispheric Shorebird Reserve Network Site.

10. Izembek Lagoon has one of the largest eelgrass beds in the world which attracts many wildlife species, including hundreds of thousands of waterfowl and shorebirds, fish, invertebrates and marine mammals. Virtually the entire population of Pacific black brant stages at Izembek to feed and build up fat reserves during their spring

*Friends of Alaska National Wildlife Refuges, et al., v. Bernhardt, et al.* Ex. 8
Case No. 3:19-cv-00216-JWS Page 3 of 12
Case 3:19-cv-00216-JWS Document 32-9 Filed 01/23/20 Page 3 of 12

and fall migrations between winter and summer habitat. Also, virtually all emperor geese rely on Izembek in the fall for feeding and to build fat reserves prior to traveling to winter habitat. The isthmus — where the proposed road would be constructed — is the primary wildlife travel corridor from east to west in Izembek, and the rich ecology of the area attracts wolves, bears, fox, and other predators to feed. The isthmus also provides the migratory corridor for caribou between summer and winter habitat and provides important winter habitat for caribou. A unique non-migratory population of tundra swans nest on the isthmus, and Pacific black brant and other birds drink water from freshwater lakes on the isthmus.

11. TWS's goal regarding Izembek is to protect its integrity and globally significant wildlife and designated Wilderness habitat.

12. The land exchange and proposed road construction would fragment the ecological heart of Izembek and its Wilderness and is contrary to the purposes for which Izembek was established. The Exchange Agreement would destroy wilderness values and create serious threats to sensitive bird populations, brown bears, caribou, sea otters, and Steller sea lions, and many other wildlife species. Construction, operation and use of the eventual road would bring traffic and air and water pollution, like fuels and other spills from vehicles, that would harm wildlife. Vehicle accidents could result in fires that adversely impact the landscape and wildlife habitat. Furthermore, the road would provide unprecedented access to the Wilderness that could bring cumulative environmental impacts that threaten biodiversity because the road would increase access for hunters. I am also concerned about the potential precedent this can establish by opening up other

*Friends of Alaska National Wildlife Refuges, et al., v. Bernhardt, et al.*     Ex. 8
Case No. 3:19-cv-00216-JWS     Page 4 of 12
Case 3:19-cv-00216-JWS    Document 32-9    Filed 01/23/20    Page 4 of 12

wilderness areas using similar land exchange deals. Although King Cove Corporation, Agdaagux Tribe of King Cove, and Native Village of Belkofski have stated the road will provide access to residents, declines in local subsistence resources by poachers and hunters will have a negative effect on the Indigenous people's access to those subsistence resources for their livelihood.

13. If the proposed he road is built it would be an eyesore on the natural landscape and will take away from the very wilderness character of this special place. Once a road is built, it can never be "unbuilt" or removed . . . it will scar the wilderness forever. Due to the lack of restrictions on road use, I'm concerned that a road could degrade quickly and require extensive maintenance, which would result in ongoing disturbance within the Refuge. Especially since heavy equipment and large vehicles would be needed which will create noise pollution in an otherwise quiet place. Degradation of a road could impact rivers and streams, as well as tundra, wetlands, and air quality as road sediment is displaced. Road construction and use would lead to animal mortality from collisions with vehicles; changes in animal behavior such as road avoidance and interference with nesting, breeding, foraging, and migration; alterations of aquatic habitat and fragmentation; and increased use of off-road vehicles that would damage the terrain and destroy Izembek's wilderness character.

14. Negative effects of a land exchange would be felt beyond a road corridor and would lead to increased access and ecological pressure in more remote areas of Izembek, such as the Joshua Green Watershed. The Joshua Green Watershed is known for its significant brown bear habitat, where brown bear home ranges are small and

*Friends of Alaska National Wildlife Refuges, et al., v. Bernhardt, et al.* Ex. 8
Case No. 3:19-cv-00216-JWS Page 5 of 12
Case 3:19-cv-00216-JWS Document 32-9 Filed 01/23/20 Page 5 of 12

brown bear productivity levels are high compared with other parts of the Alaska Peninsula. That is likely the result of high habitat quality, abundant food resources, and low levels of human disturbance compared with the rest of the peninsula. The exchange lands that would be received by the United States likely do not have the exceptionally high wildlife and wetlands habitat values of those that would be relinquished and would not likely provide a substitute for the lands exchanged and could never sufficiently mitigate the damages to this intact, globally significant habitat.

15. Because of the harm that the land exchange would cause to the exceptional wildlife habitat and wilderness values that exist at Izembek, and because of the negative precedent that the land exchange for purposes of road construction would set for designated Wilderness lands, TWS has been actively and consistently involved in protecting Izembek since the 1990s.

16. Protecting Izembek is vitally important to TWS because of the organization's mission. TWS was founded in 1935 by a group of advocates, including scientists, land managers and authors that came together because of a mutual concern about the intrusion of roads, cars, and other industrial development on America's wildlands. Our founders advocated for setting aside wild, high-value areas for conservation and permanent protection. Their work led to the passage of the Wilderness Act in 1964 and the creation of the National Wilderness Preservation System, of which Izembek's designated Wilderness is a part. De-designating Wilderness and trading it away to a private corporation with no process is antithetical to these goals and would threaten the very core of the meaning and purpose of designated Wilderness.

*Friends of Alaska National Wildlife Refuges, et al., v. Bernhardt, et al.*  Ex. 8
Case No. 3:19-cv-00216-JWS  Page 6 of 12
Case 3:19-cv-00216-JWS   Document 32-9   Filed 01/23/20   Page 6 of 12

17. TWS has been engaged in planning for Alaska National Wildlife Refuges and wilderness lands since the early decades of our organizational history. TWS's work to protect Izembek has spanned a number of decades and included communicating regularly with the U.S. Fish and Wildlife Service (FWS) and providing sound policy and scientific rationale for protecting Izembek's designated Wilderness area during past Izembek planning processes. Early on this included submitting a comment letter to the FWS in 1984 regarding the original Comprehensive Conservation Plan development process for Izembek. TWS has also attended meetings and engaged otherwise in prior planning processes related to the adjacent state game refuge, as well as state and borough-related transportation planning efforts related to the proposed Izembek road. Izembek is an important refuge to The Wilderness Society.

18. TWS has participated in every National Environmental Policy Act (NEPA) environmental review process that has taken place related to the proposed Izembek road since the late 1990s, including the NEPA process in 2003 conducted by the U.S. Army Corps of Engineers (Corps) and the 2010–2013 NEPA process conducted by the Department of the Interior. We authored scoping comments that other conservation groups signed on to and joined a comment letter on the draft environmental impact statement (EIS) from many conservation groups. We also worked on separate comments for both scoping and the draft EIS with the Center for Sustainable Economy. TWS has been involved in meetings with agency staff, written comments and letters to federal agencies, the Secretary of the Interior and President Obama, provided testimony at public meetings, educated and activated our membership and supporters to be engaged in these

*Friends of Alaska National Wildlife Refuges, et al., v. Bernhardt, et al.* Ex. 8
Case No. 3:19-cv-00216-JWS Page 7 of 12
Case 3:19-cv-00216-JWS Document 32-9 Filed 01/23/20 Page 7 of 12

planning efforts through newsletters and online action alerts and email, and educated the public through other communications and media work (including generating factsheets, press releases, blogs, editorials and reporter memos).

19. TWS has testified in Congressional hearings addressing legislation in both houses of Congress, and we have submitted written testimony for Congressional records related to Izembek legislation. TWS submitted written testimony to the Senate Natural Resources Committee on September 11, 1997, pertaining to S. 1092, the King Cove Health and Safety Act. In 2008, TWS provided testimony before the House Natural Resources Committee on H.R. 2801, a bill that would have allowed the land exchange and road construction and contained similar provisions to those that were included in the 2009 Omnibus Public Land Management Act. On April 14th, 2016, TWS testified before the Senate Energy and Natural Resources Committee in a hearing to conduct oversight on options for addressing the "continuing lack of reliable emergency medical transportation for the isolated community of King Cove, Alaska." This testimony is available on the Committee's website at:

https://www.energy.senate.gov/public/index.cfm/files/serve?File_id=65448AAC-EA46-4E6E-A7A3-8B13E778DE3E. In April 2017, TWS submitted written testimony on H.R. 218, the King Cove Road Land Exchange Act, in addition to two other bills being heard in the House Natural Resources Committee.

20. TWS also participated as Intervenor-Defendants in related litigation, *Agdaagux Tribe of King Cove v. Jewell*, 128 F. Supp. 3d 1176 (D. Alaska 2015).

*Friends of Alaska National Wildlife Refuges, et al., v. Bernhardt, et al.*  Ex. 8
Case No. 3:19-cv-00216-JWS  Page 8 of 12
Case 3:19-cv-00216-JWS   Document 32-9   Filed 01/23/20   Page 8 of 12

21. In 2018, TWS objected to the cadastral survey to survey the proposed road corridor through Izembek, arguing that the justification for conducting the survey was an improper exchange agreement that authorized the first ground-staking of the road to begin in the dark of night (outside a public process). The cloak of secrecy and suspicious timing of making over 86 helicopter landings in the wilderness area without public notice and an opportunity to be heard was simply unconscionable. Furthermore, TWS objected to the fact that BLM moved forward with the survey while active litigation was pending. TWS also objected to the fact that BLM did not perform the cadastral survey in compliance with legal mandates and the agency's own policies and procedures as set forth in the BLM *Manual of Survey Instructions* (2009) because their monuments were installed correctly. In addition, TWS protested the fact that FWS did not issue any permits for the activities on Refuge lands, thus resulting in BLM taking substantial steps to mark the future road path without proper authorization. TWS continues to object to Department of Interior's (DOI) unlawful, and egregious violations of the Wilderness Act, which was established precisely to protect wild landscapes from this type of negative environmental impact.

22. TWS was a Plaintiff in the *Friends of Alaska Nat'l Wildlife Refuges v. Bernhardt*, 381 F. Supp. 3d 1127 (D. Alaska 2019). Winning the case was a crucial step in protecting this unique and vital wildlife refuge and upholding the environmental statutes designed to protect public lands. Equally important to TWS was the validation that the system of checks and balances remains intact and is still capable of protecting public lands from unlawful and unethical government encroachment. TWS recognizes

*Friends of Alaska National Wildlife Refuges, et al., v. Bernhardt, et al.*     Ex. 8
Case No. 3:19-cv-00216-JWS     Page 9 of 12
Case 3:19-cv-00216-JWS   Document 32-9   Filed 01/23/20   Page 9 of 12

that Congress established the Izembek National Wildlife Refuge and its designated Wilderness due to its globally significant ecological resources. The Wilderness Society will continue to ensure that this unique Wilderness landscape remains wholly intact, as it is in the public's best interest to do so.

23. Izembek is personally important to me because of its extraordinary wilderness and wildlife values that are but one small piece of a greater quilt of wilderness within Alaska. Consequently, any adverse cumulative environmental impacts to one vital piece of the wilderness quilt, will have a cascading negative impact on the rest of the wilderness within Alaska. Due to the current climate change crisis, any negative interference or erosion of protective designations in Alaska will have a long-lasting disastrous ripple effect on the global health of the planet. As a result, we must protect all remaining Alaska wilderness as if it were the last, because it is.

24. Protecting Izembek is very important to our organization's mission and goals, and to our membership. Our members count on TWS and support our work, including our work to protect Izembek. The exchange agreement and road construction would harm our organizational interests in protecting Izembek for its exceptional resources and wilderness values and upholding the integrity of the Alaska National Interest Lands Conservation Act (ANILCA), the Wilderness Act, and the Wilderness Preservation System. I understand that ANILCA provides for certain activities within designated Wilderness areas. This important conservation law, however, should not be interpreted to allow the Secretary to trade away public lands in violation of its procedural and substantive protections. Such a decision harms our members' interests in enforcing

*Friends of Alaska National Wildlife Refuges, et al., v. Bernhardt, et al.*     Ex. 8
Case No. 3:19-cv-00216-JWS     Page 10 of 12
Case 3:19-cv-00216-JWS     Document 32-9     Filed 01/23/20     Page 10 of 12

legal protections for Izembek. The exchange agreement would also harm our members' desires to protect and preserve Wilderness and wild places to provide opportunities for solitude, and wildlife and landscape viewing.

25. I have become aware that while our last lawsuit was pending, DOI conducted a secret and unauthorized survey within Izembek's wilderness, which used helicopter landings to install monuments (122 stainless steel rods and posts with brass caps) along the proposed road corridor to further the land exchange. Those intrusive monuments are still there and delineate the corridor of land to be traded away in the current agreement. The very existence of the 122 monuments is a violation of the Wilderness Act and is contrary to the spirit and intent of the very purpose of the Izembek Refuge. The presence of the monuments takes away from the raw wilderness character of Izembek and must be removed from the protected area.

26. It is critical for TWS to be able to continue to protect these interests on behalf of our members.

27. Our organization has a strong interest in ensuring that federal agencies follow the public participation requirements of NEPA. As stated above, TWS has participated in every NEPA process that has taken place regarding the proposed Izembek road since the late 1990s, engaging our membership and experts to identify issues and explain the impacts of a land exchange and road. The Secretary failed to undertake any environmental analysis or public process before entering the land exchange agreement, harming TWS' and our members' interests in providing comments and testimony about

*Friends of Alaska National Wildlife Refuges, et al., v. Bernhardt, et al.* Ex. 8
Case No. 3:19-cv-00216-JWS Page 11 of 12
Case 3:19-cv-00216-JWS Document 32-9 Filed 01/23/20 Page 11 of 12

the negative environmental impacts of the proposed road to foster informed decision-making.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of January, 2020 in Anchorage, Alaska.

_____
Karlin Joseph Itchoak

*Friends of Alaska National Wildlife Refuges, et al., v. Bernhardt, et al.* Ex. 8
Case No. 3:19-cv-00216-JWS Page 12 of 12
Case 3:19-cv-00216-JWS Document 32-9 Filed 01/23/20 Page 12 of 12