**Steven W. Silver   AK Bar No. 7606089**
**Robertson, Monagle, and Eastaugh, PC**
**1810 Samuel Morse Drive Suite 202**
**Reston, VA 20191**
**703.527.4414 (office)**
**703.313.1793 (fax)**
**ssilver628@aol.com**

**James F. Clark, III  AK Bar No. 690725**
**Law Office of James F. Clark**
**1109 C Street**
**Juneau, AK 99801**
**907.586.0122 (main)**
**907.586-1093 (fax)**
**jfclarkiii@gmail.com**

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FRIENDS OF ALASKA NATIONAL WILDLIFE REFUGES, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>  DAVID BERNHARDT, et al.,<br>      Defendants,<br><br>and<br><br>  KING COVE CORPORATION, et al.,<br>      Intervenor-<br>Defendants | Case No. 3:19-cv-00216-JWS<br><br><br><br>**DEFENDANT-INTERVENORS' OPPOSITION BRIEF TO PLAINTIFS' MOTION FOR SUMMARY JUDGMENT (Civil Rule 56(a), Local Civil Rule 16.3)** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………..……..…..…..v

LIST OF SHORT NAMES AND ACRONYMS ...................................................ix

INTRODUCTION.......................................................................................1

STATEMENT OF FACTS……………………….……………………...…….3

STANDARD OF REVIEW……………………….…………………….......3

ARGUMENT……………………………………………………….…....5

I.    THE SECRETARY'S JULY 3, 2019 DECISION IS NOT A
      REVERSAL OF SECRETARY JEWELL'S 2013 DECISION OR
      OTHER DEPARTMENT OF INTERIOR POLICY AND THUS THE
      FOUR FACTOR TEST SET OUT IN FOX DOES NOT
      APPLY…………..………………………………………………6

II.   PLAINTIFFS' SPECIFIC CONTENTIONS THAT THE LAND
      EXCHANGE IS AN IMPERMISSIBLE CHANGE IN POLICY ARE
      WITHOUT MERIT……………………………………………......12

      A.    Plaintiffs' Claim That the Decision Document Fails to Adequately
            Address Harm to the Refuge's Irreplaceable Resources Is Based on
            Trustees' Erroneous Assertion that the Land Exchange Authorizes
            Construction of a Road…...…………………………….…….13

      B.    Plaintiffs' Claim That the Decision Document Fails to Adequately
            Explain His Conclusion Regarding the Value of Lands to be Received
            Via the Exchange Is Without Merit……………………………..15

      C.    The Decision Document Provides Good Reasons for Disregarding
            the Alternative Transportation Options in the 2013 ROD…………..18

*Friends of Alaska National Wildlife Refuges et.al, v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

III. NOTWITHSTANDING SECRETARY BERNHARDT'S CONCERN ABOUT THERE BEING AN "EXTENT" TO WHICH THE LAND EXCHANGE IS A CHANGE IN POLICY FROM SECRETARY JEWELL'S 2013 ROD, THERE IS NO CHANGE IN POLICY………………………………………………....19

IV. THE LAND EXCHANGE DOES NOT VIOLATE NEPA…..…….....21

    A.    The Land Exchange is exempt from NEPA under Section 1302 of ANILCA……………………………………………………...24

    B.    The Land Exchange Is Also Exempt from NEPA under Section 910 of ANILCA……………………………….………...27

    C.    Conclusion……………………………………………30

V. THE LAND EXCHANGE FURTHERS THE PURPOSES OF ANILCA…………………………………………………..…..30

VI. THE LAND EXCHANGE IS NOT SUBJECT TO, AND THUS, DID NOT VIOLATE, ANILCA TITLE XI…………………………….....35

VII. THE SECRETARY DID NOT VIOLATE THE CONSULTATION REQUIREMENTS OF THE ENDANGERED SPECIES ACT……….37

VIII. VACATING THE AGREEMENT IS AN INAPPROPRIATE AND UNNECESSARY REMEDY……………...…………………….....37

IX. CONCLUSION……………………………………..………...38

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

# Table of Authorities

**Cases**

*Ark Initiative v. Tidwell*, 816 F.3d 119, 129-130 (D.C. Cir. 2016)………...11,12,18

*Bahr v. EPA*, 836 F.3d 1218, 1229 (9th Cir. 2016)………………………….……17

*City & County of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997)…………………………………………………………………………….…..3

*City of Angoon v. Marsh*, 749 F.2d 1413, 1415 (9th Cir. 1984)………...…….......…32

*Consejo De Desarrollo Economico De Mexacali v. United States*, 482 F3d 1157 (9th Cir. 2007)………………………………………………,,,,.… 25,26

*Couer Alaska Inc. v. S.E. Alaska Conservation Council*,   557 U.S. 261, 129 S.Ct.2458 (2009).;………………………………………………………….……..37

*FCC v. Fox Television*, 556 U.S. 502 (2009)………....1,2,,7,8,11, 12, 13, 14,15,18

*Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008),  aff'd, 629 F.3d 1074 (9th Cir.2010)…………………………………………………………………4,5,34

*League of Wilderness Defenders Blue Mountains Biodiversity Project v. Allen*, 615 F.3d 1122 (9th Cir. 2010)……………..…………………………………5,34

*Miccosukee Tribe of Indians v. United States Army Corps of Engineers*, 619 F.3d 1289 (11th Cir. 2010)…………………………………..…………………27

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co. Inc.*, 459 U.S. 29, 43 (1983)……………….………………………………………4,15

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt  et. al.*
Case 3:19-cv-00216-JWS

Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658 (2007)……………………………………………………………………4

*National Audobon Society v. Hodel,* 606 F. Supp. 825 828-29(D. Alaska1984)…32

*Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs, 384 F.3d 1163, 1170 (9th Cir.2004)*………………………………………………………………4

*Natural Res. Def. Council v. Nat'l Marine Fisheries Serv., 421 F.3d 872, 877 (9th Cir. 2005)*……………………………………………………………4

*Oregon Natural Resources v. Thomas*, 92 F.3d 792, 796 (1996)………………8, 24

*Organized Village of Kake v. U.S. Department of Agriculture*, 795 F.3d 956 (9th Cir. 2015)………………………………………….…1,2,8,11,18

*Pollinator Stewardship Council v. EPA* 806 F.3d 520 (9th Cir. 2015)………………………………………………………………37

*State of Alaska v. United States Forest Service*, 2019 WL 2465174 Slip Op at 2 (Attachment 1)……………………………………………….……….24

*Tyonek Native Corp. v. Secretary of Interior*, 836 F.2d 1237, 1240 (9th Cir., 1988)…………………………………………………...…23

*Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996)………………….…….......36

*Yazzie v. U.S. Envtl. Prot. Agency*, 851 F.3d 960, 968 (9th Cir. 2017)……...……17

**Statutes**

Administrative Procedures Act  5 U.S.C. §701-706 ……………….....1,3,5,12,18,33

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt  et. al.*
Case 3:19-cv-00216-JWS

16 U.S.C. §1613a…………………………………...………..........22,27,28,30

16 U.S.C . §3101 (b), (c), and (d)……………...……………….……………31

16 U. S.C. 3162…………………………………………………………..…….35

16 U.S.C. § 3164…………………………...………………………...……3,35

16 U.S.C. 3170……………………………………………………………31

16 U.S.C. 3192,,,,,,,,,,,,,,..1,2,7,9,10,11,12,13,17,20,21,22,24,26,29,30,32,33,34,36

43 U.S.C. § 1613a…………………………………..……………….7,28,29,32

43 U.S.C. § Section 1621(f)…………………………………...11,17,20,30,33,34

43 U.S.C. 1638………………………………..……..….……1,2,21,22,23,27,28,30

Alaska Native Claims Settlement Act Pub. L 94-204, 89 Stat. 1145(1971),……………………..…………..2,3.11,12,22,28,2930,31,33,34,36

Alaska National Interest Lands Conservation Act , Pub. Law 96-487, 94 Stat. 371 (1980)……1, 2, 6,7,9,11,13, 15,12,19,20,21,22,23,24,27,28,29,30,31,32,33,37

Endangered Species Act (16 U.S.C 1536)……………………………...……37

National Environmental Policy Act (42 U.S.C. §§ 4321 – 4370)…………………………….2,3,21,23,24,25,26,27,28

Omnibus Publ. Land Mgmt. Act of 2009 (Pub. Law 111-11, Title VI, 123 Stat.99)……………………………………………….……………6,7,8,19,20,21

**Rules**

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

Fed. R. Civ. P. 56 (a)……………………………………………………...……..3

**Other Authorities**

Charles  F. Wilkinson, AMERICAN INDIANS, TIME, AND THE LAW 52
(1987)  Alaska Law Review………………………………..…………………………..22

Senate Energy and Natural Resources Committee Report S. REP. NO. 96-413
…………………………….……………………………………………...…25,29,30

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt  et. al.*
Case 3:19-cv-00216-JWS

## List of Short Names and Acronyms

ANCSA                        Alaska Native Claims Settlement Act

ANILCA                       Alaska National Interest Lands Conservation Act

APA                          Administrative Procedure Act

Borough                      Aleutians East Borough

Corps                        U.S. Army Corps of Engineers

Interior                     Department of the Interior

EIS                          Environmental Impact Statement

ESA                          Endangered Species Act

Izembek or the Refuge        Izembek National Wildlife Refuge

NEPA                         National Environmental Policy Act

OPLMA                        Omnibus Public Land Management Act of 2009

The Secretary                Secretary of the U.S. Department of Interior

The Service                  U.S. Fish and Wildlife Service

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

**DEFENDANT INTERVENORS OPPOSITION TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT**


## INTRODUCTION

Before the Court is the Secretary's July 3, 2019 Decision to approve a land exchange between the U.S. Fish & Wildlife Service and King Cove Corporation (KCC) (Land Exchange). The Land Exchange transfers land ownership to Alaska Natives through a process that Congress has firmly committed to the discretion of the Secretary of Interior in Alaska National Interest Lands Conservation Act, (16 U.S.C § 3101-3233) (ANILCA) § 1302 (h). Road construction through the Izembek Wildlife Refuge is explicitly not authorized as part of the Land Exchange.[1]

Nevertheless, the Plaintiffs' Opening Brief wrongly claims that the Secretary's July 3, 2019 Land Exchange Decision also authorizes road construction in the Refuge. Based upon this incorrect contention Plaintiffs argue that the Land Exchange Decision reverses Secretary Jewell's 2013 policy decision (that denied a land exchange that did include road construction) in violation of the Administrative Procedures Act's (5 U.S.C. §§ 701 – 706) (APA) requirements for changing agency policy as set out in *FCC v. Fox Television,* 556 U.S. 502 (2009) and

---

[1] Decision Document at 2 and 16. (AR INT- 002815 and AR INT- 002829).

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt  et. al.*
Case 3:19-cv-00216-JWS

1

*Organized Village of Kake v. U.S. Department of Agriculture*, 795 F.3d 956 (9th Cir. 2015).

Because the Land Exchange Decision did not authorize construction of a road through the Refuge, because the Decision was authorized by federal statutes different than that which authorized Secretary Jewell's 2013 Record of Decision (ROD), because it was based on a record different from that which supported Secretary Jewell's 2013 ROD, and because the Alaska Native Claims Settlement Act (43 U.S.C. §§ 1601-1624) (ANCSA) and ANILCA specifically authorize land exchanges in which the indigenous people who have occupied the land for 4,000 years are authorized by Congress to become owners of land that has been held in a Federal Conservation System Unit (CSU) for 60 years; Secretary Bernhardt's decision to approve the Land Exchange is in accord with, and does not reverse or contradict, any prior Department of Interior (DOI) policy. Thus, Secretary Bernhardt's Land Exchange Decision is not subject to the *Fox* and *Organized Village of Kake* four-factor test on which Plaintiffs' entire case depends.

Moreover, for the reasons given in the Decision Document[2] and in this Brief below: 1) the Land Exchange does not require a National Environmental Policy

---

[2] Decision Document at 2 and 16. (AR INT-002815 and AR INT- 002829).

Act (42 U.S.C. §§ 4321 – 4370) (NEPA) review;[3] 2) it furthers the purposes of ANILCA; and 3) it is not subject to ANILCA § 1104 as Plaintiffs erroneously claim. Accordingly, Defendant Intervenors respectfully request that Plaintiffs' Motion for Summary Judgment be denied.

## STATEMENT OF FACTS

The Secretary's July 3, 2019 Decision Document (pages 3 – 12) (AR INT - 002816 and AR INT- 002825) does an excellent job of setting out the facts of this matter and is hereby incorporated by reference.

## STANDARD OF REVIEW

A plaintiff seeking to challenge a federal agency's compliance with NEPA must bring its claim under the APA 5 U.S.C. § 706. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). In reviewing an administrative agency decision, 'summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did.'" *City & County of San Francisco v. United States,* 130 F.3d 873, 877 (9th Cir. 1997) (quoting

---

[3] ANILCA §§ 1302 (h) and 910.

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

*Occidental Eng'g Co. v. INS,* 753 F.2d 766, 770 (9th Cir. 1985)).

Under the APA, a court may set aside a final agency action only if, after reviewing the administrative record, the agency's action is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Natural Res. Def. Council v. Nat'l Marine Fisheries Serv.,* 421 F.3d 872, 877 (9th Cir. 2005). A decision is not arbitrary or capricious if the federal agency explained its action by articulating a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.* v. *State Farm Mut. Auto Ins. Co. Inc.* 459 U.S. 29, 43 (1983); *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs,* 384 F.3d 1163, 1170 (9th Cir.2004).

The arbitrary and capricious standard is narrow and precludes a reviewing court from substituting its own judgment for that of an expert federal agency. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007). The Ninth Circuit's *en banc* opinion in *Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008), *aff'd*, 629 F.3d 1074 (9th Cir. 2010), restored the Ninth Circuit to affording appropriate deference to agency decision-making consistent with that applied by the U.S. Supreme Court and followed by other Circuit Courts of Appeal. *McNair* reminded the Courts of this Circuit not to step into the role of scientist by second-guessing how an agency validates competing scientific hypotheses, evaluates scientific studies or resolves scientific uncertainty. *Id*. at

4

988. *McNair* emphasized that reviewing courts should be at their most deferential where an agency is addressing difficult scientific issues within its area of special expertise. *Id*. at 993.

Since the *en banc McNair* opinion issued, the courts of this Circuit have heeded *McNair* by affording proper deference to scientific agency expertise in the APA setting. In *League of Wilderness Defenders Blue Mountains Biodiversity Project v. Allen*, 615 F.3d 1122 (9th Cir. 2010) (*Allen*), an Oregon District Court's decision halting a forest restoration project involving thinning of forest habitat was reversed. The *Allen* majority acknowledged its responsibility to grant its "highest deference . . . to the Forest Service's technical analyses and judgments within its area of expertise," and it also criticized a dissenting judge's effort to second-guess the agency's technical determinations "because he does not like the Forest Service's approach to solving the problems addressed. We went *en banc* [in *McNair*] to foreclose precisely this type of second-guessing." *Id*. at 1131.

## ARGUMENT

The Secretary has executed a land exchange agreement, nothing more. The Agreement simply authorizes a transfer land ownership. It does not authorize construction of a road. Accordingly, the harms Plaintiffs allege from road construction will not be caused by the Land Exchange and, thus, Defendant

5

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS
Case 3:19-cv-00216-JWS    Document 39    Filed 03/09/20    Page 13 of 48

Intervenors respectfully request that their Motion for Summary Judgment be denied.

I. **THE SECRETARY'S JULY 3, 2019 DECISION IS NOT A REVERSAL OF SECRETARY JEWELL'S 2013 DECISION OR OTHER DEPARTMENT OF INTERIOR POLICY AND THUS THE FOUR FACTOR TEST SET OUT IN *FOX* DOES NOT APPLY**

The issue before Secretary Jewell in the 2013 ROD was explained as follows:

> The Record of Decision provides the determination of the U.S. Department of Interior regarding whether to proceed with a land exchange **and allow road construction through the Izembek National Wildlife Refuge,** as provided in the Omnibus Public Land Management Act of 2009. (2013 ROD at page 2). (AR INT- 001237-38 ). (Emphasis added).

In contrast the decision made by Secretary Bernhadt was set out as follows in the Decision Document:

> The question before me is whether to authorize a land exchange pursuant to ANILCA that will afford KCC the ability to use its land selections in the pursuit of a better range of health and safety options for their community.
>
> -    -    -    -    -    -    -    -    -    -
>
> **Nevertheless, as noted above, any decision by KCC to pursue a road connection is separate and distinct from the land exchange authorized here.** (Decision Document at page 16). (AR INT- 002829). (Emphasis added).

These are not the same decisions. The decision before Secretary Jewell was to proceed with a land exchange ***and*** authorize construction of a road through the

6

Izembek Wildlife Refuge pursuant to authority granted to her by the Omnibus Public Land Management Act of 2009 (Public Law 111-11, Title VI, Subtitle E (OPLMA). The decision before Secretary Bernhardt was to proceed with a land exchange pursuant to authority granted to him by ANILCA § 1302 (h) and ANSCA 43 U.S.C. § 1613(a).[4]

Notwithstanding the Secretary's explicit explanation that "any decision by KCC to pursue a road connection is separate and distinct from the land exchange authorized here," Plaintiffs' entire case is based on their gross mischaracterization that "[i]n executing the Exchange Agreement, the Secretary failed to explain his reversal of decades of agency findings and decisions rejecting a land exchange for a road." (Plaintiffs' Opening Brief at page 12).[5] By misrepresenting the decision actually taken by Secretary Bernhardt, Plaintiffs present the Court with the spurious legal claim that Secretary Bernhardt failed to comply with the four-factor test *FCC v. Fox Television Stations*, 556 U.S. 502 (2009). (Plaintiffs' Opening Brief at pages 12 and 13).

_____

[4] Paragraph A, Land Exchange Agreement. (AR INT - 002868*).

[5] See also Plaintiffs' same mischaracterization of Secretary Bernhardt's Decision at pages 1, 8, 11, 16, 17, 18, 24, 25, 27, 28, 29, 30, 35, and 38. The Decision Document specifically says that it does not authorize construction of a road at pages 2, 14, and 16. (. (AR INT - 002815, AR –INT 002827, and AR INT - 002829)

7

In *Fox* the United States Supreme Court considered whether the FCC's decision to begin treating isolated uses of non-literal profanity in television broadcasts as indecent constituted an arbitrary and capricious policy change. Previously, the FCC had required repetitive use to render non-literal profanity as indecent. In other words, the FCC's indecency standard was based on the same considerations, but what had previously not been considered indecent was now considered indecent.

In *Organized Village of Kake v. United States Department of Agriculture,* 795 F.3d 956, 967 (9th Cir. 2015) (*en banc*) the Department of Agriculture used the same facts in the 2000 EIS (which underlay its decision in the 2001 ROD to apply the Roadless Rule to the Tongass National Forest), as support for its decision in the 2003 ROD (which reversed its decision to apply the 2001 Roadless Rule to the Tongass National Forest). The *En Banc* Court stated:

> The central issue in this case is whether the 2003 ROD rests on factual findings contradicting those in the 2001 ROD, and thus must contain the "more substantial justification" or reasoned explanation mandated by *Fox.*

It follows that in order for the *Fox* line of cases to apply to the present case, Secretary Bernhardt's decision to grant the land exchange would have to contradict the facts on which the 2013 ROD had been decided. Secretary Jewell decided to disapprove the 2013 land exchange pursuant to the process established by

8

*Friends of Alaska National Wildlife Refuges et.al, v, Bernhardt  et. al.*
Case 3:19-cv-00216-JWS
Case 3:19-cv-00216-JWS   Document 39   Filed 03/09/20   Page 16 of 48

Congress in OPLMA because it would have also authorized construction of a road through the Refuge.[6]  Since the construction of a road through the Refuge was specifically and expressly not authorized by Secretary Bernhardt's land exchange decision, his land exchange decision (made pursuant to authority granted by Congress in ANILCA § 1302 (h)), was a new decision - not a change from what Secretary Jewell had decided.

Moreover, the Federal Government has no policy prohibiting a land exchange which would restore ownership of land to the indigenous people who have occupied it for 4,000 years. In fact, the contrary is true. Paragraphs 3 and 4 of the Declaration of Henry Mack, attached to Defendant Intervenors' Motion to Intervene, set out a compelling reason for the Secretary to approve the Land Exchange:

> 3.  I have a spiritual and subsistence connection to the area contained in the King Cove  Land Exchange.  My ancestors, family members and I have fished, hunted, picked berries and subsisted on these lands since time immemorial and long before the United States  "bought" Alaska from Alaska in 1867 and also long before the Secretary of Interior designated that area in 1960 as part of the Izembek National  Wildlife Range. My spiritual and subsistence connection continues unbroken to this day.

> 4. In my opinion, this land exchange will partially right a long-term wrong which my family, the Aleut people and I have suffered since the Range and now Refuge was established on our ancestral lands.  We have not been able to enjoy the area and foster a better relationship with the U. S. Fish and

---

[6] See 2013 ROD at page 3. (AR INT - 002839).

*Friends of Alaska National Wildlife Refuges et.al, v, Bernhardt  et. al.*
Case 3:19-cv-00216-JWS

Wildlife Service. For example, when the USFWS considered what the land status of this areas should be during the consideration of the Alaska Native Lands Conservation Act in 1977-1980, we Aleut people and residents of King Cove and Cold Bay were not even contacted to ask our opinion of what the land status of the area should. As far as I know the Congress was not even informed that we Aleut people might have an opinion or concerns on how the status of this land might affect our lives and our spiritual and cultural connection to this land.

The Declaration of Leff Kenezuroff further illustrates this:

1. I am 91 years old and am a shareholder of the King Cove Corporation. I am also an Aleut member of the Native Village of Belkofski, a certified tribe recognized by the Department of Interior. The Village used to be located near what is now the exterior boundaries of what is now the Izembek Refuge.

2. As a child and young man, I actually lived part time in my Village, and subsisted, hunted, and fished within the exterior boundaries of the Refuge. But my Village was effectively eliminated by officers of the US Fish and Wildlife Service who came into the Village and ordered us to leave. Then these officers burned our cabins. Thus, the Native Village of Belkofski was rendered a physical nonentity. I gave this testimony in Tribal to Tribal consultation with Dept. Of Interior a few years ago, but no action to restore our village or compensate our tribe or tribal members was ever taken.

3. I am an original shareholder of the King Cove Corporation, but that does not compensate for the wrong done to our Village and Tribe. So, it is particularly important that my tribe be a Defendant-Intervenor in this litigation. The particular experience of my Village is an important part of this case and needs to be told and considered as part of this litigation.

4.The Native Village of Belkofski strongly supports this land exchange. If our Village had not been destroyed, our land would still be located near the boundaries of the Refuge. So, the land ownership provided by this land exchange is the first time some Aleut land will be returned to our people.

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

Federal policy set out in ANCSA § 22 (f) and ANILCA § 1302 (h) specifically provide the Secretary the authority he used to respond to situations like those described above:

> I am cognizant of the Department's responsibilities to the Alaska Native people, particularly in fulfilling the promises made to adequately address their economic, social, and cultural needs as provided in ANCSA and ANILCA. (Decision Document at page 2) (AR INT- 002815).

The test for whether there has been a change in policy requiring application of the *Fox* four factor test in this case should be similar to that applied in *Ark Initiative v. Tidwell,* 816 F.3d 119, 129-130 (D.C. Cir. 2016) in which the D.C Circuit held that *Fox* did not apply. In that case environmental groups sued the Forest Service alleging that the Service had opted generally not exempt ski areas from application of the 2001 Roadless Rule. Therefore, the environmental groups contended, when it exempted ski-area acreage from the 2012 Colorado Roadless Rule the Forest Service was required to "provide a more detailed justification than what would suffice for a new policy created on a blank slate." The Court distinguished *Organized Village of Kake*:

> The 2012 Colorado Rule, in contrast, was based on an entirely new record, including a new EIS, and supported with new, State-specific findings. None of the Colorado findings conflicts with the findings underlying the nationwide 2001 Roadless Rule, which looked at "the 'whole picture' regarding the management of the National Forest System," 66 Fed. Reg. at 3246; *see id.* at 3246–48, and which, the Service even then acknowledged, could affect states differently, *id.* at 3264. No enhanced justification was required for the Service's State-specific ski-area exclusion.

11

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

Because Secretary Bernhardt's Land Exchange Decision is based on different facts than Secretary Jewell's 2013 ROD (because it does not authorize construction of a road through the Refuge), and because it was made pursuant to different federal statutes that specifically authorize land exchanges in which ANCSA corporations are authorized by Congress to become owners of land  previously held in Federal CSUs and, because it was based on a different record than Secretary Jewell's 2013 ROD; Secretary Bernhardt's decision to approve the Land Exchange does not reverse, any prior Department of Interior policy. So, just as in *Ark Initiative v. Tidwell,* the Land Exchange Decision presents "a material change in the overall decision making picture" and is not subject to the *Fox* four-factor test on which Plaintiffs' entire case depends.

## II.    PLAINTIFFS' SPECIFIC CONTENTIONS THAT THE LAND EXCHANGE IS AN IMPERMISSIBLE CHANGE IN POLICY ARE WITHOUT MERIT.

*Fox* requires a four-factor test to determine whether an agency's change in policy complies with the APA. The agency must (1) display "awareness that it *is* changing position;" (2) show that "the new policy is permissible under the statute;" (3) believe the new policy is better; and (4) provide "good reasons" for the new policy, which, if the "new policy rests upon factual findings that contradict those which underlay its prior policy," must include "a reasoned explanation . . . for

disregarding facts and circumstances that underlay or were engendered by the prior policy." This requires "a more detailed justification than what would suffice for a new policy created on a blank slate." (*Fox* at 515-516).

Plaintiffs concede that the Decision Document complies with the first and third factors, but allege that it fails the second[7] and fourth factors. (Plaintiffs' Brief at page 13). Plaintiffs assert three major eas in which they claim the Secretary failed "to provide a reasoned explanation for disregarding facts that underlay the Service's longstanding refusal to exchange lands:"

1. failure "to adequately address findings regarding harm to the Refuge's irreplaceable resources;" (Plaintiffs' Brief at 15);

2. failure "to adequately explain his conclusion regarding the value of lands to be received via the exchange:" (Plaintiffs' Brief at 17); and

3. failure "to adequately address prior factual findings regarding alternative transportation options and his contrary findings are not supported by the record." (Plaintiffs' Brief at 18 -19).

**A.** **Plaintiffs' Claim That the Decision Document Fails to Adequately Address Harm to the Refuge's Irreplaceable Resources Is Based on Plaintiffs' Erroneous Assertion that the Land Exchange Authorizes Construction of a Road.**

---

[7] Plaintiffs state that the Land Exchange "is not permissible under the statute" because it failed to serve the purposes of ANILCA as required by ANILCA § 1302 (h). (Plaintiffs' Brief at 13). Plaintiffs argument on this point is refuted in Section V of this Brief below.

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

The Decision Document states at multiple points that, unlike the decision made by Secretary Jewell in 2013, the Land Exchange does not authorize construction of a road: "Again, the land exchange agreement remains a purely legal transaction and does not authorize any ground disturbing activities." Decision Document at 16; See also pages 2 and 14. (INT- 002829, AR INT- 002815, AR INT-00028, and AR INT- 002827). Nevertheless, Plaintiffs persist in mischaracterizing Secretary Bernhardt's Decision by claiming that it authorized construction of a road:

> The 2013 ROD (like prior decisions) found that the exchange would not protect Izembek's resources while the Secretary now states that it will. But the Secretary's Memo does not confront the prior findings, only offering conclusory statements instead of reasoned explanation supported by the record. For instance, the 2013 ROD determined that the road proposal, despite limitations on use, would result in increased human access and activity that would have "profound adverse effects on wildlife use and habitats of the isthmus" and Wilderness. (Plaintiffs' Brief at page 15).

(See also Plaintiffs' Brief at pages 1, 8, 11, 16, 17, 18, 24, 25, 27, 28, 29, 30, 35, and 38).

For the reasons previously described in Section I and in this Section of Defendant Intervenors Opposition Brief, and because Plaintiffs' argument is based on the false assertion that it also approves construction of a road, the Land Exchange Decision does not constitute a change in policy from Secretary Jewell's 2013 ROD and thus does not raise *Fox* issues.

B. **Plaintiffs' Claim That the Decision Document Fails to Adequately Explain His Conclusion Regarding the Value of Lands to be Received from KCC Via the Exchange Is Without Merit.**

The Supreme Court explained the test for "good reasons" in *Fox*:

> [T]his means that the agency need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate. Sometimes it must—when, for example, its new policy rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account. (*Fox* at page 515).

In selecting the KCC lands that DOI would receive in the Land Exchange, the Secretary provided a "rational connection between the facts found and the choice made:" (*Motor Vehicle Mfrs. Ass'n of U.S., Inc. supra.*)

> I find that the habitat the FWS would receive for addition to the refuge in the proposed land exchange is consistent with and will be acquired for the purposes of ANILCA. While the 2013 ROD discounted the value of the habitat FWS would receive in a potential land exchange. I find that Federal ownership and a more permanent conservation status for the lands and land selection rights to be acquired enhances the purposes of the Refuge. In fact, as noted in the record. the 1998 Izembek Land Protection Plan identified lands owned by King Cove Corporation within the Refuge boundaries as containing valuable fish and wildlife habitat and prioritized this land for acquisition and protection. (Decision Document at page 18).

The Secretary further found that the Land Exchange would add

> substantial acreage to the Izembek and Alaska Peninsula refuges  that  has been previously identified by the FWS as being important habitat while offering KCC the opportunity to explore improved public safety through a safer and more reliable means of emergency access to the Cold Bay airport for the residents of and visitors to King Cove. Decision Document at 19. (AR INT - 002832).

15

*Friends of Alaska National Wildlife Refuges et.al, v, Bernhardt  et. al.*
Case 3:19-cv-00216-JWS

Nevertheless, Plaintiffs assert that the Decision Document violates the "good reasons" test by attempting to paint Secretary Bernhardt's decision to accept KCC's offer of 500 acres and a relinquishment of its right to select 5430 acres for 500 acres of Refuge land as unreasonable when compared with Secretary Jewell's 2013 rejection of 56,393 acres of KCC and State land for 206 Acres of Refuge land. Plaintiffs' Brief at 23. This argument is based upon the false comparison of "the Service's 2013 findings that the value of those lands would not compensate for or offset the negative impacts of road construction to the Refuge" with the Land Exchange Decision before this Court which does not authorize road construction through the Refuge.

Because this exchange does not authorize construction of a road, the "not more than 500 acres conveyed to KCC" may never be developed. The risks to KCC of being unable to fully finance construction of a road and of never being able to obtain the permits to construct it are significant. Construction of a one lane gravel road within the 500 acres transferred to KCC by the United States - would require permits from federal and state agencies, which would doubtless be litigated. Should any one of these contingencies not occur, KCC will have transferred its land to the Izembek National Wildlife Refuge and surrendered its

selection rights to 5,430 acres of land within the Izembek Wilderness, but there will be no road.

Accordingly, it was reasonable for the Secretary to place a higher value on the lands containing important wildlife and wilderness values that the Izembek Refuge would receive for certain, than the 500 acres that were exchanged to KCC that may never be developed. The Secretary must be allowed to balance the positives of the lands obtained with any negatives regarding land relinquished. Given

Given the significant discretion to make land exchanges that Congress has vested in the Secretary under Section 22 (f) of ANCSA and 1302 (h) of ANILCA, the agency expertise needed to make a land exchange decision, the fact that this Land Exchange does not approve construction of a road and is thus different from the land exchange Secretary Jewell rejected in 2013 (and thus is a "clean slate"), and the deference to agency decision-making applied by the Ninth Circuit;[8] the Court should defer to the Secretary short of obvious error.   In short, the facts that support the Land Exchange *minus a road* do not contradict the facts underlying the Secretary Jewell's refusal of 56,390 acres for 206 acres *plus a road* in 20

---

[8] "The standard is 'highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision.' *Bahr v. EPA*, 836 F.3d 1218, 1229 (9th Cir. 2016) (citation and internal quotation marks omitted)." *Yazzie v. U.S. Envtl. Prot. Agency*, 851 F.3d 960, 968 (9th Cir. 2017).

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt  et. al.*
Case 3:19-cv-00216-JWS

### C. The Decision Document Provides Good Reasons for Disregarding the   Alternative Transportation Options in the 2013 ROD

Plaintiffs argue that the Secretary "failed to adequately address prior factual findings regarding alternative transportation options and his contrary findings are not supported by the record. (Plaintiffs' Brief at page 18). This is simply wrong. At pages 8 – 11 the Decision Document (AR INT- 002821 – AR INT- 002824) describes Secretary Bernhardt's review of alternative transportation options and the reasons for his contrary findings.

Unlike the situation in *Kake,* Secretary Bernhardt does not reach new conclusions based on the same record in a way that contradicts the facts in that record. Instead, his "contradictions" are based on a subsequent 2015 report containing new data and new information that refute the facts on which Secretary Jewell relied in 2013. This is the "material change in the overall decision-making picture" described by the D.C. Circuit in *Ark Initiative, supra,* at 129 – 130.

In sum Plaintiffs' claim that the Land Exchange at issue here violates the APA because it is a change in policy that fails to meet the *Fox* four factor test is without legal merit.

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt  et. al.*
Case 3:19-cv-00216-JWS

### III. NOTWITHSTANDING SECRETARY BERNHARDT'S CONCERN ABOUT THERE BEING AN "EXTENT" TO WHICH THE LAND EXCHANGE IS A CHANGE IN POLICY FROM SECRETARY JEWELL'S 2013 ROD, THERE IS NO CHANGE IN POLICY

Even though the Secretary Bernhardt's decision to approve a land exchange without approving a road was not a reversal of Secretary Jewel's 2013 decision to deny a land exchange that included a road for the reasons given in Sections I and II of this Brief above, in an abundance of caution Secretary Bernhardt nevertheless states: "**to the extent** an authorization under ANILCA constitutes a policy change from that described by Secretary Jewell in the 2013 ROD rejecting a similar but not identical land exchange under OPLMA, such change is warranted, necessary and appropriate. Decision Document at 2. (AR 002815). (Emphasis added).

He further states:

> [T]he decision to authorize a land exchange between FWS and KCC represents a change in policy position **to the extent** that such an agreement would provide the opportunity for KCC to possibly pursue the design permitting and potentially the construction of a road connection and the 2013 ROD declined to approve the transfer of a road corridor to the State of Alaska for the construction, operation, and maintenance of a road between the communities of King Cove and Cold Bay. (Decision Document at page 18). (AR INT- 002831). (Emphasis added).

However, there is no change in policy. The "policy reversal" cannot be the authority to construct a road which his Decision expressly makes clear is not part of the land exchange. It may mean the *potentia*l for KCC to seek the permits to

19

construct a road on land that it would own.  However, authorizing a land exchange which provides only "the *opportunity* for KCC to *possibly pursue* the design permitting and *potentially* the construction of a road connection" is not a change in government policy.  Congress offered "the *opportunity* to *possibly pursue* the design permitting and *potentially* the construction of a road connection" in OPLMA in 2009.

The policy reversal to which Secretary Bernhardt is referring cannot mean the authority to transfer land from the Refuge to its prior indigenous owners – government policy set out in Sections 22 (f) of ANCSA and 1302 (h) of ANILCA provide Congressional authority to exchange lands within a CSU.

Moreover, it cannot mean a policy difference with Secretary Jewell regarding a land exchange (without a road) affecting the Refuge. Secretary Jewell did not turn down the OPLMA land exchange because the 13,300 acres offered by KCC and the 43,093 acres offered by the State would not have added value to the Refuge. Instead, she refused to approve the land exchange only because doing so would have also approved construction of the road pursuant to OPLMA: "The proposed land exchange would transfer to the State of Alaska all right, title, and interest to a road corridor for the construction, operation, and maintenance of a single lane gravel road between the communities King Cove and Cold Bay,

Alaska." (2013 ROD at page 2). (AR 001237-38). "The EIS shows that construction of a road through the Izembek National Wildlife Refuge would lead to significant degradation of irreplaceable ecological resources that would not be offset by the protection of other lands to be received under the exchange." (2013 ROD at page 3). (AR 001237-38).

Accordingly, notwithstanding Secretary Bernhardt's concern about there being an "extent" to which the land exchange is a change in policy from Secretary Jewell's 2013 ROD, there is no change in policy "from that described by Secretary Jewell in the 2013 ROD rejecting a similar but not identical land exchange under OPLMA regarding construction of a road through the Refuge."

## IV. THE LAND EXCHANGE DOES NOT VIOLATE NEPA

Plaintiffs contend that the Exchange Agreement violates NEPA. (Plaintiffs Brief at page 30). Plaintiffs are incorrect. The Land Exchange is exempt from NEPA pursuant to the "notwithstanding any other provision of law" language in Section 1302 (h) of ANILCA and under the plain language of Section 910 of ANILCA.[9]

_____

[9] In 2013 and 2014 the Secretary used his ANILCA § 1302(h) authority to make at least three land exchanges for equal value for ANC Village Corporations within the Yukon Delta Wildlife Refuge. The exchanges involved lands located near the villages. See Appendix 9, KCC letter. (AR INT- 002504-38). The identical legal

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

Again, the Land Exchange does not authorize road construction or any other ground disturbing activity: "To be clear, the exchange does not authorize the construction of a road." Decision Document at 2. (AR INT- 002815).

Paragraph A of the Agreement sets out the authority under which the Secretary made the Land Exchange:

> The Parties agree that the exchange is made pursuant to the Secretary of the Interior's authority under section 1302(h) of ANILCA, as amended, 16 U.S.C. § 3192(h), that pursuant to 16 U.S.C. § 1613a this exchange of land is a conveyance under ANCSA and therefore subject to section 910 of ANILCA, 43 U.S.C. § 1638.

Congress granted sweeping authority to the Secretary to make land conveyances and exchanges benefitting Alaska Natives:[10]

> ANCSA and ANILCA are both unique to Alaska and serve to provide very broad authority to undertake land exchanges on more flexible terms than the major land exchange legislation generally applicable elsewhere in the United States.

---

authority was used to make those exchanges as was used to make this exchange. No NEPA analysis was performed and none of these exchanges was challenged by the Plaintiffs on either a legal or policy basis. These exchanges thus reflect Secretarial policy to treat land exchanges under ANILCA § 1302 (h) as exempt from NEPA pursuant to ANILCA § 910.

[10] If Indians are involved, you should infuse **all federal laws, old and new**, with the policy of the special Indian trust relationship and read those laws with a heavy bias in favor of Indian and tribal prerogatives. If the first reading does not produce a result in favor of the Indians, you should read the document again. And once again – with an inventive mind. CHARLES F. WILKINSON, AMERICAN INDIANS, TIME, AND THE LAW 52 (1987). (emphasis added) quoted from Alaska Law Review 37 at 39, 1999.

-     -     -     -     -     -     -     -     -     -

> Together, the two statutes provide a very broad scope of administrative authority to conduct land exchanges in Alaska. Significantly, ANILCA also provides that the National Environmental Policy Act of 1969 (NEPA) should not be construed as requiring the preparation of an environmental impact statement for "withdrawals, conveyances, regulations, orders, easement determinations, or other actions" that lead to the issuance of conveyances to Native Corporations under either ANCSA or ANILCA.

Decision Document at 15. (AR INT- 002828).

In *Tyonek Native Corp. v. Secretary of Interio*r, 836 F.2d 1237, 1240 (9th Cir., 1988) the Ninth Circuit recognized the deference owed the Secretary and the liberal construction to be given provisions favoring Alaska Natives:

> This case presents two conflicting canons of statutory construction. On one hand, statutes benefiting Native Americans should be construed liberally in their favor. See *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g,* 467 U.S. 138, 149, 104 S. Ct. 2267 2274, 81 L.Ed.2d 113 (1984). On the other hand, we owe considerable deference to the interpretation of the Settlement Act by the Secretary of the Interior. See *Doyon, Ltd. v. Bristol Bay Native Corp.,* 569 F.2d 491, 496 (9th Cir.), cert. denied, 439 U.S. 954, 99 S.Ct. 352, 58 L.Ed.2d 345 (1978); see also *Monet v. INS*, 791 F.2d 752, 753 (9th Cir.1986).

Unlike the situation *Tyonek*, the deference owed the Secretary and the liberal construction owed to Alaska Natives join in this case to support the Secretary's assertion of authority under Sections 1302(h) and 910 to make the Land Exchange without a NEPA review. In short, the Secretary properly applied Sections 1302(h) and 910 of ANILCA to the Land Exchange.

## A.  The Land Exchange is exempt from NEPA under Section 1302 (h) of ANILCA:

Section 1302(h) of ANILCA provides:

> *Notwithstanding any other provision of law*, *in acquiring lands for purposes of this Act*, the Secretary is authorized to exchange lands *(including lands within conservation units and* within the National Forest System) or interests therein (including Native selection rights) with the corporations organized by the Native Groups, Village Corporations, Regional Corporations, and the Urban Corporations, and other municipalities and corporations or individual, the State (acting free of the restrictions of 6(i) of the Alaska Statehood Act), or any Federal agency.

The phrase *Notwithstanding any other provision of law*, is a Congressional directive that exempts an action from NEPA and other statutory impediments to approval. As Judge Beistline put in *State of Alaska v. United States Forest Service,* 2019 WL 2465174 Slip Op at 2 (Attachment 1):

> Congress's grant "notwithstanding any other provision of law" exempts the   Section 4407 easements from Defendants' review and decision making       under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321,    *et seq.,* the National Forest Management Act, 16 U.S.C. §§ 1600, *et seq.,*and any regulations or Forest Plan promulgated thereunder. The Court expressly rejects Defendants' interpretation of the D-2 easement that would require a Forest Service NEPA review and decision prior to the State of Alaska ground disturbing activities within the boundaries of a D-2 easement area.

Judge Beistline's application of the "notwithstanding any other provision of law" language to exempt the easements from NEPA and NFMA is consistent with Ninth Circuit precedent. *Oregon Natural Resources v. Thomas,*92 F.3d 792, 796 (1996).

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt  et. al.*
Case 3:19-cv-00216-JWS

In *Consejo De Desarrollo Economico De Mexacali v. United States,* 482 F3d 1157 (9th Cir. 2007) the Court determined the extent to which the phrase "Notwithstanding any other provision of law, upon the date of enactment of this Act, the Secretary shall, without delay, carry out the All American Canal Lining Project" applied to the All–American Canal, which is one of the world's largest irrigation canals, carrying water from the Colorado River to the Imperial Valley in California. The Court held:

> Placing the "notwithstanding" language of the 2006 Act in context, we are guided by the further statutory language that the Lining Project proceed "without delay" "upon the enactment of this Act." 2006 Act § 395(a). If Congress had intended for the Lining Project to proceed under the usual course of administrative proceedings, it would have been unnecessary for Congress to act at all. The environmental challenges would have been resolved in due course. However, proceeding along the usual course of resolving environmental disputes would be inconsistent with the Bureau of Reclamation proceeding "without delay" "upon the enactment of this Act." *Consejo, supra.,* at 1169.

> -        -              -                    -                  -                    -

> Congress has instructed otherwise, "notwithstanding any other provision of law." Therefore, we must construe the 2006 Act as exempting the Lining Project from the identified statutory claims. *Consejo, supra.,* at 1169.

While Section 1302 (h) does not include the words "without delay," the need to expeditiously transfer their land to Alaska Natives without a NEPA review is made abundantly clear in Committee Report S. REP. NO. 96-413, at 292; Attachment 2 of Plaintiffs' Brief at 9; *See also* n. 166 Plaintiffs' Brief at

33.:[11]

> This section provides that the National Environmental Policy Act (NEPA) shall not be construed as requiring the preparation of an environmental impact statement in the implementation of the Alaska Native Claims Settlement Act, as amended, or implementation of this Title. **This section is intended to cover every possible action which has and will be necessary for the Secretary to take in the process of conveying land title to the Alaska Natives. It is intended that there will be no ambiguity as to the intent of this section and it should be liberally construed in order to expedite the implementation of the ANCSA, as amended, and this Title.**
>
> Actions taken by the Secretary under the ANCSA that may be interpreted as major Federal actions under the National Environmental Policy Act have principally been at the direction of Congress in the ANCSA or amendments thereto. **It is imperative that the Natives receive their land as quickly as possible. Time is of the essence. Preparation of an environmental impact statement under the NEPA is unnecessary and not warranted where implementation of the ANCSA of this Title is involved.** (Emphasis added).

The Report shows that, as in *Consejo*, Congress intended that conveyances, like the Land Exchange in this case, occur "as quickly as possible," making an EIS under NEPA "unnecessary." As in *Consejo,* if Congress had intended for the land exchanges to proceed under the usual course of administrative proceedings, including a NEPA review, it would have been unnecessary for Congress to include the "notwithstanding any other provision of law" phrase. It follows that, as in *Consejo,* Congress employed the phrase "notwithstanding any other provision of

---

[11] This Report, prepared almost 10 years after passage of ANSCA, shows Congressional concern with the injustice of the slow progress in completing ANCSA land entitlements.

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

law" in ANILCA § 1302 (h) to exempt ANCSA and ANILCA land exchanges with Native entities from NEPA.

The Eleventh Circuit found it persuasive that the phrase says "notwithstanding *any* other provision of law." "Nothing about the word "any" suggests that "law" should refer only to appropriation laws, rather than "any" laws. *Miccosukee Tribe of Indians v. United States Army Corps of Engineers* 619 F.3d 1289, 1301 (11th Cir. 2010).

In the same way, the word "any" in ANILCA § 1302 (h) necessarily includes NEPA and any other law affecting a land exchange. This interpretation is consistent with the Plain Meaning canon of statutory construction.

### A. The Land Exchange Is Also Exempt from NEPA under Section 910 of ANILCA

Paragraph A of the Agreement sets out the authority under which the Secretary made the Land Exchange:

> The Parties agree that the exchange is made pursuant to the Secretary of the Interior's authority under section 1302(h) of ANILCA, as amended, 16 U.S.C. § 3192(h), that pursuant to 16 U.S.C. § 1613a this exchange of land is a conveyance under ANCSA and therefore subject to section 910 of ANILCA, 43 U.S.C. § 1638.

The Decision Document explains that:

> Significantly, ANILCA also provides that the National Environmental Policy Act of 1969 (NEPA) should not be construed as requiring preparation of an environmental impact statement for "withdrawals, conveyances, regulations, orders, easement determinations, or other

actions" that lead to the issuance of conveyances to Native Corporations under either ANCSA or ANILCA. Decision Document at 15. (AR INT- 002828).

Nevertheless, Plaintiffs argue that the Land Exchange required a NEPA analysis because:

> [W]hile the list included in Section 910 is inclusive it does not include land exchanges. This makes sense because conveyances of lands under ANCSA, which Congress sought to expedite in ANILCA, were not occurring by land exchange. Plaintiffs' Brief at 31.

Plaintiffs also argue the plain language of ANILCA § 910 makes the exemption dependent on the conveyance being made under ANCSA, or the ANILCA amendments to ANCSA to fulfill land entitlements. Plaintiffs' Brief at 32.

Plaintiffs' argument is refuted by 16 U.S.C. § 1613a which deems a land exchange to be an ANCSA conveyance:

> All land and interests in land in the State of Alaska conveyed by the Federal Government under the Alaska Native Claims Settlement Act (43 U.S.C. 1601 et seq.) to a Native Corporation and reconveyed by that Native Corporation, or a successor in interest, in exchange for any other land or interest in land in the State of Alaska and located within the same region (as defined in section 9(a) of the Alaska Native Claims Settlement Act (43 U.S.C. 1608(a)), to a Native Corporation under an exchange or other conveyance, **shall be deemed, notwithstanding the conveyance or exchange, to have been conveyed pursuant to that Act.**

So, Plaintiffs are simply wrong: 16 U.S.C. § 1613a provides that land exchanges are deemed to be conveyances under ANCSA and thus exempt from NEPA under ANILCA § 910.

28

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

In addition, while Section 910 does not expressly use the words "land exchange," it does expressly include authority to apply Section 910 to "other actions which lead to the issuance of conveyances to Natives or Native Corporations, pursuant to the Alaska Native Claims Settlement Act, *or this Act.*" Again, 43 U.S.C. § 1613 (a) deems an exchange of lands to be a conveyance under ANCSA.

Finally, Committee Report S. REP. NO. 96-413, at 292;[12] makes clear that Congress intended that ANILCA § 910 be expansively and liberally interpreted and applied:

> This section is intended to cover every possible action which has and will be necessary for the Secretary to take in the process of conveying land title to the Alaska Natives. It is intended that there will be no ambiguity as to the intent of this section and it should be liberally construed in order to expedite the implementation of the ANCSA, as amended, and this Title.

As a corollary of their argument Plaintiffs also contend that the land exchange does not fulfill KCC's ANCSA entitlement because it does not result in a charge against KCC's ANCSA entitlement. Therefore, they claim, the Land Exchange is not exempt under ANILCA § 910. Plaintiffs' Brief at 34. Plaintiffs are incorrect. In acquiring the relinquishment of 5430 acres of KCC selection rights within the Izembek Refuge Wilderness and approximately 500 acres of

---

[12] Attachment 2 of Plaintiffs' Brief at 9; *See also* n. 166 Plaintiffs' Brief at 33.

29

*Friends of Alaska National Wildlife Refuges et.al. v. Bernhardt et. al.*
Case 3:19-cv-00216-JWS

KCC land within the Refuge, the Secretary agreed to convey 500 acres of land within the conservation unit (that may never be developed). Decision Document at 14, n.47. (AR INT- 002827).

### B. Conclusion

Given: 1) the broad authority Congress gave the Secretary to make land exchanges pursuant to ANCSA § 22 (f) and ANILCA § 1302 (h); 2) the fact that Congress granted ANILCA § 1302 (h) land exchange authority to the Secretary "notwithstanding any other provision of law," which the Ninth Circuit interprets to include NEPA; 3) the facts that ANILCA § 910 provides a specific exemption from NEPA for "conveyances" and "actions which lead to the issuance of conveyances to" … "Native Corporations," and that a land exchange is deemed to be a conveyance under ANCSA pursuant to 16 U.S.C. § 1613a; and 4) a Congressional Report (S. REP. NO. 96-413) which directed that ANILCA § 910 be expansively and liberally interpreted and applied; the conclusion is compelled that NEPA does not apply to the Land Exchange.

### V.    THE LAND EXCHANGE FURTHERS THE PURPOSES OF ANILCA

Plaintiffs complain that this ANILCA § 1302 (h) Land Exchange "violates ANILCA because it does not further its purposes" which they incorrectly limit to "conservation and protection of ecologically important habitats, wildlife and wilderness values, and subsistence." Plaintiffs Brief at 19.

30

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

The purposes of ANILCA are far broader and include many more purposes than acknowledged by Plaintiffs:

1. ANILCA and ANSCA are intertwined. Of the 18 defined terms in ANILCA, nine refer directly to ANCSA or ANCSA terms. Additionally, Section 1302(h) relies specifically on the definitions of Native selections, Native Groups, Regional Corporation, Village Corporation and Urban Corporation specifically defined by ANILCA.;

2. ANILCA has 15 Titles of which Sections 101(a) and (b) and Section 303(3) (re-designating Izembek Refuge) are a small part;

3. ANILCA Section 101(c) specifically declares it a purpose of ANILCA "to provide for the opportunity for rural residents engaged in a subsistence way of life;"

4. ANILCA Section 303(3) defines the purposes for which the Refuge was re-designated to include:' "the opportunity for continued subsistence for local residents." (emphasis added). The reference to local residents is significant and specific. With one Exception, none of Plaintiffs' Declarants is a local resident and none participates in subsistence;

5. ANILCA Section 101(d) states that: "The Act . . . provides . . . for the satisfaction of the economic and social needs of the State of Alaska and its people. ANILCA § 101(d) (emphasis added). This clearly includes the Aleut people and other residents in King Cove and Cold Bay; and

6. ANILCA Section § 1110 provides in holder access to occupants "effectively surrounded by one or more conservation system units." In this case, King Cove and any of KCC's lands are effectively surrounded by the Izembek CSU due to the impassable terrain and a treacherous ocean, leaving the only possible land access to Cold Bay through the Izembek unit. ANILCA § 1110 provides that under such circumstances "the private owner or occupier shall be given by the

Secretary such rights as may be necessary to assure adequate and feasible access for economic and other purposes." Given that the Land Exchange contemplates a possible road in the future to provide exactly such access to King Cove residents, the Land Exchange clearly furthers a purpose of ANILCA.

In *National Audubon Society v. Hodel,* 606 F. Supp. 825, 828-29 (D. Alaska 1984) the Court found ANILCA § 1302 (h) imposes two requirements on the Secretary. The first requirement is that the exchange "will result in acquiring lands for the purposes of ANILCA." The second requirement is that the exchange must further the public interest only if the lands to be exchanged are of unequal value, which does not apply to this Land exchange which is for equal value. Regarding the first requirement - that the exchange will result in acquiring lands for the purposes of ANILCA – Judge Fitzgerald simply listed the ANILCA purposes which the Secretary had concluded would be furthered by the land exchange. *Id.* at 829. Secretary Bernhardt did much more than simply list the ANILCA purposes that justified the Land Exchange. Citing *City of Angoon v. Marsh*, 749 F.2d 1413, 1415 (9th Cir. 1984) Secretary Bernhardt described his approach to "acquiring lands for the purposes of ANILCA" as follows:

Congress enacted ANILCA "to preserve and protect 'nationally significant natural, scenic, historic, archeological, geological, scientific, wilderness, cultural, recreational, and wildlife values' and landscapes by creating 'conservation system units,' such as national parks, preserves, refuges, and other Federal reservations." Congress also protected the "subsistence way of life for rural residents" with this act as well as the resources upon which they depend, in order to remove the need for future legislation regarding

32

environmental conservation and subsistence uses. The Ninth Circuit has opined that these purposes of ANILCA can be distilled into the "dual purpose" of furnishing "guidelines for the protection for the national interest in the scenic, natural, cultural and environmental values of the public lands in Alaska and to provide an adequate opportunity for satisfaction of the economic and social needs of the people of Alaska." Congress structured ANILCA in this fashion after becoming "aware of the need for a legislative means of maintaining the proper balance between the designation of national conservation areas and the necessary disposition of public lands for more intensive private use. Decision Document at 13 – 14. (AR INT- 002826 – AR INT - 002827).

Applying these principles Secretary Bernhardt found with respect to the land

acquired from KCC:

> I find that the habitat the FWS would receive for addition to the refuge in the proposed land exchange is consistent with and will be acquired for the purposes of ANILCA. While the 2013 ROD discounted the value of the habitat FWS would receive in a potential land exchange, I find that Federal ownership and a more permanent conservation status for the lands and land selection rights to be acquired enhances the purposes of the Refuge. In fact, as noted in the record, the 1998 Izembek Land Protection Plan identified lands owned by King Cove Corporation within the Refuge boundaries as containing valuable fish and wildlife habitat and prioritized this land for acquisition and protection. Decision Document at 18. (AR INT - 002831).

> Plaintiffs clearly disagree with the Secretary regarding how to balance and

apply these many ANILCA purposes in making this specific land exchange:

> In sum, the Exchange Agreement is for the specific purpose of taking land out of Izembek and designated Wilderness for a road. The protection of human life and safety cannot be at the expense of ANILCA's and Izembek's purposes. Plaintiffs' Brief at 24 - 25.

However, ANCSA § 22 (f) and ANILCA § 1302 (h) vest tremendous discretion in

the Secretary to make a land exchange agreement. The APA does not allow

Plaintiffs to second guess the Secretary on the values and risks he is authorized to take into account in making a land exchange decision. *Lands Council v. McNair,* 537 F.3d 981 (9th Cir. 2008), aff'd, 629 F.3d 1074 (9th Cir. 2010); *League of Wilderness Defenders Blue Mountains Biodiversity Project v. Allen,* 615 F.3d 1122 (9th Cir. 2010). Accordingly, Secretary Bernhardt had the authority under ANILCA to weigh the value of the lives of the people at King Cove differently than Plaintiffs:

> I choose to place greater weight on the welfare and well-being of the Alaska Native people who call King Cove home. I value the well-being of an entire community over the impacts derived from the change in ownership of these various parcels of property which are an incredibly small percentage of Alaska's Wilderness.

In conclusion, given: 1) the broad discretion vested in the Secretary by ANCSA § 22 (f) and ANILCA § 1302 (h) to make land exchanges; 2) the many purposes of ANILCA, the balancing of which (in determining what is an ANILCA purpose) Section 1302 (h) assigns to the Secretary; 3) the Secretary's explanation why the Land Exchange meets ANILCA's purposes; and 4) the fatal flaw in Plaintiffs' argument (that the Decision Document authorizes construction of a

road); the Plaintiffs' contention that the Land Exchange violates ANILCA because it does not further its purposes is without merit.[13]

## VI. THE LAND EXCHANGE IS NOT SUBJECT TO, AND THUS, DID NOT VIOLATE TITLE XI

ANILCA § 1104 says "[N]o action by any Federal agency under applicable law with respect to the approval or disapproval of the authorization, in whole or in part, of any transportation or utility system shall have any force or effect unless the provisions of this section are complied with." ANILCA § 1102 (4)(A) defines "transportation or utility system" to mean "any type of system described in subparagraph (B) [among which is a road] if any portion of the route of the system will be within any conservation system unit, national recreation area, or national conservation area in the State (and the system is not one that the department or agency having jurisdiction over the unit or area is establishing incident to its management of the unit or area).

Plaintiffs assert that Title XI provides the sole authority for approval of a road "within a conservation system unit like Izembek," which the Secretary cannot

---

[13] Plaintiffs point out that although the Secretary says: "This balancing of needs would be enhanced through the adoption of restrictions on the nature of any road to single-lane gravel construction on which non-medical uses and access would be severely limited" Decision Document at 19. (AR INT- 002832). This requirement is not reflected in the Land Exchange Agreement. Plaintiffs' Brief at 23. The Decision Document requirement that "non-medical uses and access would be severely limited" governs and will be included in the conveyance document.

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

"circumvent" by a land exchange. Plaintiffs Brief at 25. However, as the Decision Document points out the fatal flaws with this argument are: 1) Title XI does not apply because the Land Exchange does not authorize construction of a road,[14] and, thus, there is no "transportation or utility system" involved in this land exchange; and 2) it fails to recognize that after the Land Exchange the 500 acres conveyed to KCC will no longer be in the Refuge – the KCC land will not be within a CSU. Decision Document at 14 – 15, n. 47. (AR 002827-28).

Even if Title XI somehow applied, Congress employed the phrase "notwithstanding any other provision of law" in ANILCA § 1302 (h) to exempt ANCSA and ANILCA land exchanges with Native entities. The word "any" necessarily includes Title XI and any other law affecting a land exchange. This interpretation is consistent with the Plain Meaning canon of statutory construction.

In addition, Plaintiffs' interpretation that the general provisions of Title XI should trump conveyances to Natives under ANILCA § 1302 (h) is inconsistent with the canon of construction that a specific provision applies over the general one no matter how "inclusive may be the general language of a statute." *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996). This canon is particularly applicable

---

[14] "To be clear, the exchange of lands does not itself authorize the construction of a road." Decision Document at 2. (AR 002815).

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

when "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id.* By ANILCA § 1302 (h) Congress specifically enacted a process to expeditiously convey land to Natives. Congress prioritized the specific directive of ANILCA § 1302 (h) over any general provision of law when it included the "notwithstanding any other provision of law" clause in its lead-in language.

VII. **THE SECRETARY DID NOT VIOLATE THE CONSULTATION REQUIREMENTS OF THE ENDANGERED SPECIES ACT**

Defendant-Intervenors hereby incorporate by reference the reasons set out in the Defendants' Opposition Brief explaining why the change in land ownership resulting from the Land Exchange does not trigger consultation under the Endangered Species Act (hereinafter "ESA") and thus does not violate the Section 7 consultation requirement or any other provision of the ESA.

VIII. **VACATING THE AGREEMENT IS AN INAPPROPRIATE AND UNNECESSARY REMEDY.**

Vacatur is an inappropriate and unnecessary remedy here. Unlike the cases cited by Plaintiffs, this case is not about a regulation (*Pollinator Stewardship Council v. EPA* 806 F.3d 520 (9th Cir. 2015)) or an agency permit (*Couer Alaska Inc. v. S.E. Alaska Conservation Council,* 557 U.S. 261, 129 S.Ct. 2458 (2009). Because this is a land agreement between the Secretary and an Alaska Native

organization, the Court should make every effort to follow the time-honored rule and resolve ambiguities in favor of the Native organization and allow the parties to remedy any insufficiencies found by the Court.

Should the Court grant Plaintiffs' Motion for Summary Judgment, Defendant Intervenors request the Court to authorize additional briefing on the remedy so that the remedy can be consistent with the Court's Order.

## IX.   CONCLUSION

Plaintiffs' Motion for Summary Judgment should be denied and Summary Judgment should be granted to Defendants and Defendant Intervenors.

RESPECTFULLY SUBMITTED this 9th day of March 2020.

s/Steven W. Silver
Steven W. Silver   Alaska Bar No. 7606089
Robertson, Monagle, and Eastaugh, PC
1810 Samuel Morse Drive Suite 202
Reston, VA 20191
703.527.4414 (office)
703.313.1793 (fax)
ssilver628@aol.com

s/James F. Clark, III Alaska Bar No. 690725
James F. Clark, III
Law Office of James F. Clark
1109 C Street
Juneau, AK 99801
907.586.0122 (main)
907.586-1093 (fax)
jfclarkiii@gmail.com

*Attorneys for Defendant-Intervenors*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2020 I served a copy of DEFENDANT-INTERVENORS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT by electronically filing it with the Clerk of the U.S. District Court for Alaska which will send electronic copies of such filing to all attorneys of record in this case, all of whom are registered with the Court's CM/ECF system

*s/Steven Silver*
Steven Silver
Alaska Bar No. 7606089
Robertson, Monagle, and Eastaugh, PC
1810 Samuel Morse Drive Suite 202
Reston, VA 20191
703.527.4414 (office)
703.313.1793

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt et. al.*
Case 3:19-cv-00216-JWS

*Friends of Alaska National Wildlife Refuges et.al. v, Bernhardt  et. al.*
Case 3:19-cv-00216-JWS